**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

SHAWN SOUTHERLAND,              :
                                :    Civil Action No. 10-3563 (DRD)
          Plaintiff,            :
                                :
     v.                         :    **OPINION**
                                :
COUNTY OF HUDSON, et al.,       :
                                :
          Defendants.           :


**APPEARANCES:**

Plaintiff <u>pro se</u>
Shawn Southerland
516654E/739978
East Jersey State Prison
3 Wing - Cell -347
Lock Bag 'R'
Rahway, NJ 07065


**DEBEVOISE**, District Judge

   Plaintiff Shawn Southerland, a prisoner confined at East Jersey State Prison, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.

   At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.  BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that officers of the Bayonne, New Jersey Police Department performed an illegal search and seizure upon him on April 9, 2007 when they entered his residence to investigate a missing persons report and states that the officers filed false charges as a result of that search.  Plaintiff states that "the central legal issue which Plaintiff complains is that office George Ponik P204 of the Bayonne Police Department violated the Fourth Amendment rights of Plaintiff in that he admitted to unlawful eavesdropping in a residence which at the time in question, Plaintiff resided."

Plaintiff further alleges that he became an inmate at Hudson County Correctional Center (hereinafter referred to as "HCCC") in Kearny, New Jersey on June 4, 2010 and was assigned to the C - 5 - East cellblock which houses high bail pretrial detainees.  He alleges that he was held in segregation at HCCC from June 11, 2010 to October 23, 2010 and again from unspecified dates in December 2010 until January 2011.  He alleges that inmates in that section were only allowed two hours out of their cell per day.  He states that the "schedule run by the defendants 23 hrs a day 5-days a week and 32 hrs 2-days a week" was a hardship on him, a pretrial detainee.

Plaintiff also states that he had inadequate access to a law library and claims that he has been denied access at an appellate court level and in New Jersey Superior Court because his briefs were handwritten and not typed. He states that he had law library access on Tuesdays between 7:30 a.m. and 8:45 a.m. and initially Thursdays from 10:30 to 11:45 which was changed to Fridays between 10:30 a.m. and 11:45 a.m. Plaintiff states that he was given access to the law library totaling three hours per week. Plaintiff makes the assessment that the amount of law library time afforded to him was "inadequate" for his needs.

Plaintiff contests the 10% commissary surcharge being imposed by HCCC for the Victims of Crime Compensation Board (hereinafter referred to as "VCCB").

## II. DISCUSSION

### A. Legal Standard

1. Standards for a Sua Sponte Dismissal

The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant

who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S. Ct. at 1948).

The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See Iqbal, 129 S. Ct. at 1949-50. See also Twombly, 505 U.S. at 555, & n.3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

2. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

B.   Plaintiff's Claims

   1.   Claims Regarding Search and Seizure

As to any claims arising out of the alleged illegal search and seizure on April 9, 2007, even if Plaintiff could have presented any viable theories of deprivation of constitutional rights occurring on that date, any claims arising from those facts would appear to be time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Jones v. Bock, 549 U.S. 199, 214-15 (2007) (if the allegations of a complaint, "for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

Civil rights claims are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions. See Wilson v. Garcia, 471 U.S. 261, 280, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), (partially later superseded by statute). See also Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000) ("In determining which state limitations period to use in federal civil rights cases, we look to the general, residual statute of limitations for personal injury actions). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Plaintiff's claims. See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989). Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987). Unless

their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application. <u>Wilson v. Garcia</u>, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling." <u>See</u>, <u>e.g.</u>, N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. <u>See</u> <u>Freeman v. State</u>, 347 N.J. Super. 11, 31 (citations omitted), <u>cert. denied</u>, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." <u>Id.</u>

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to

federal tolling doctrine.  See Lake v. Arnold, 232 F.3d at 370. Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, according to the allegations of his Complaint, the claim of alleged illegal search and seizure on April 9, 2007 would have accrued on that same date and as such are time-barred. Plaintiff alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law.  Thus, any potential claims arising out of incidents occurring on that date are time-barred and will be dismissed.

    2.  Claims Regarding False Testimony

The Second Amended Complaint does not provide facts to support this claim.  Plaintiff states that Defendant George Ponik of the Bayonne Police Department gave false testimony at an N.J.R.E. 104-C hearing, yet does not describe the constitutional violations that allegedly occurred, only stating that Ponik "testified to allegations which he knew were false."  With nothing more than generalized allegations, this claim does not survive the standards set forth in Iqbal that the complaint must

allege "sufficient factual matter" to show that the claim is facially plausible and, as such, this claim must be dismissed.

   3.   Claims Regarding Classification Status

   Plaintiff alleges constitutional violations based on being housed in a segregated unit during certain time periods while incarcerated at HCCC as a pretrial detainee.

   As a pre-trial detainee, an individual is protected by the Due Process Clause of the Fourteenth Amendment. Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (Due Process clause of the Fourteenth Amendment provides protections for pre-trial detainees similar to those protections afforded to sentenced prisoners); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979). The Eighth Amendment sets forth the minimum standard by which claims of pre-trial detainees rights should be evaluated. See Bell, 441 U.S. at 544 ("pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners").

   In the context of a security classification claim, an inmate does not have a liberty interest in assignment to a particular institution or a particular security classification. See Wilkinson v. Austin, 545 U.S. 209 (2005)(the Constitution does not give rise to a liberty interest in avoiding transfers to mor adverse conditions of confinement); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976);

Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process"). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"). Furthermore, the placement of prisoners within the prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. at 225.

Therefore, Plaintiff has failed to state a claim of constitutional violation with respect to this issue and this claim will be dismissed accordingly.

    4.  Claims Regarding Access To Courts

Plaintiff raises the issue of access of courts admitting that he was given twice weekly law library access totaling three hours per week. He bases his claims on the fact that certain litigation was hindered because he did not type his briefs. However, he has not shown that this was due to lack of access to

11

a law library, in fact, he admits that he "did not know that the Superior Court Appellate Division would not accept his handwritten brief."

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

There is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. ... [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-

frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them. ... This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access. But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis v. Casey, 518 U.S. 343. Thus, "there is no First Amendment right to subsidized mail or photocopying. [Instead], the inmates must point to evidence of actual or imminent interference with access to the courts." Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or

13

imminent "actual injury." See Lewis, 518 U.S. at 348-55 and n.3 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).

Here, Plaintiff has not provided sufficient factual support to show that his constitutional rights have been violated in this regard. Particularly, he has not linked the actions of prison officials to any actual injury. As such, this claim will be dismissed.

5. Claims Regarding Commissary Tax

Plaintiff alleges that as a pre-trial detainee he should not have been subject to the imposition of a 10% VCCB surcharge on his commissary purchases. See N.J. Stat. Ann. § 30:4-15.1. Pursuant to New Jersey statute § 30:4-15.1, "[e]very commissary in a county or State correctional facility operated for the sale of commodities shall collect a surcharge of 10% of the sales price of every item sold. The surcharge shall be known as the VCCB Surcharge.' All funds collected pursuant to this section shall be forwarded to the State Treasurer for deposit in the Victims of Crime Compensation Board Account, ...."

The United States Court of Appeals for the Third Circuit addressed a comprehensive challenge to the VCCB Surcharge statute, including due process, equal protection, and double jeopardy challenges, and found the statute constitutional under both the United States and New Jersey Constitutions. See Myrie v. Comm'r, N.J. Dept. of Corrections, 267 F.3d 251 (3d Cir.

14

2001).  See also Auge v. N.J. Dept. of Corrections, 327 N.J. Super. 256, 743 A.2d 315 (N.J. Super. 2000), cert. denied, 174 N.J. 559 (2000) (rejecting double jeopardy and due process challenges under both New Jersey and United States Constitutions).  With regard to the fact that the VCCB surcharge would apply "across the board" to all inmates, the Third Circuit noted that the surcharge was not a criminal punishment, but was a civil remedial program, reasoning:

> To be sure, this history does not specify why the Legislature looked to prison inmates as the source of the needed revenues.  It would seem, however, not unreasonable to infer that the Legislature regarded the inmate population as a cohort whose members were in large measure accountable for the victim harms for which adequate compensation had not been achieved.
> Such a legislative attribution of accountability-assuming it was, in fact, made-would not, of course, be flawless.  As pointed out by the fiscal note, the program adopted by the Legislature contemplated that the surcharge would be added to the price of all inmate purchases, including purchases by inmates who had already completed payment of sums owing to the VCCB.  Also, the New Jersey inmate population presumably included-and continues to include persons held in pre-trial custody, not convicted of any crimes.  But this lack of one-to-one correspondence between a particular inmate's purchase and an identifiable and precisely quantifiable dollar obligation to a victim does not undercut the general rationality of the attribution of accountability which, we assume, animated the Legislature.  More to the point, it does not undercut the conclusion that the surcharge regime was intended by the Legislature to be civil and remedial.

Myrie, 267 F.3d at 258-259.  The Third Circuit also used this rationale to hold that the surcharge did not violate the due process or equal protection rights of inmates, including those who may not owe any money to the VCCB.  See id. at 263.

In this case, Plaintiff, as a detainee in the county jail, was properly subject to the VCCB charge, even though he, himself, may not have owed any money to the fund at the time that the surcharge was imposed.  Accordingly, Plaintiff fails to state a claim of a constitutional violation arising out of the collection of the VCCB Surcharge.

### III.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim. An appropriate order follows.

**s/ Dickinson R. Debevoise**
Dickinson R. Debevoise
United States District Judge

Dated: July 26, 2012